SIMPSON *v.* BOYKIN.

[79 South. 852, Division B.]

1. APPEAL AND ERROR. *Time. Rendition of judgment. Rendered.*
   Under the Code of 1906, sections 82, 83, as amended by the Laws of 1912, chapter 203, limiting the time after the rendition of a judgment, within which an appeal must be taken, a judgment is "rendered" at the time when judgment is pronounced in open court at the conclusion of the trial, and not at the time when it is entered on the docket.

2. LANDLORD AND TENANT. *Unlawful detainer proceedings. Appeal.*
   An appeal from the judgment of a justice of the peace dispossessing a tenant, under the Code of 1906, section 2885 (Hemingway's Code, section 2383), must be taken within five days after pronouncement of judgment, under section 82 of the Code of 1906.

3. JUSTICE OF THE PEACE. *Jurisdiction. Unlawful detainer. Amount involved.*
   A justice of the peace has jurisdiction of an action to dispossess a tenant under the Code of 1906, section 2885 (Hemingway's

Code, section 2383), though the rental for the year for which the premises were leased, exceeded two hundred dollars, such jurisdiction being a special statutory jurisdiction, deriving its force from legislation under section 172 of the Constitution of 1890, providing that "the legislature shall, from time to time, establish other inferior courts, as may be necessary, and abolish the same whenever deemed expedient."

Appeal from the circuit court of Quitman county. Hon. W. A. Alcorn, Jr., Judge.

Action by W. R. Boykin against T. C. Simpson. Judgment for plaintiff in justice court. From an order of the circuit court dismissing the appeal, defendant appeals.

The facts are fully stated in the opinion of the court.

*Denton & Boone,* for appellant.

I agree with counsel that the first question is whether the defendant is allowed five days or ten days within which to perfect his appeal; but, in order to decide this question, it is necessary to determine, first, whether the justice of the peace had any jurisdiction to try the issues which the record shows were involved in the case before him; and, second, whether the appeal was perfected within five days, conceding that the justice of the peace did have jurisdiction, and also conceding that section 2895, Code of 1906, applies.

Counsel for appellee has not yet disagreed with me on the proposition that if the justice of the peace had no jurisdiction, then the general statute allowing ten days for appeals would apply as in any case where there was no jurisdiction, and I do not think there can be any difference of opinion on this point.

A magistrate simply cannot try a suit in ejectment or an unlawful entry and detainer case single handed. In some of the reported cases cited in the texts which we have referred to as authorities on this point, it was

vigorously contended that the mere filing of a counter-affidavit, such as the one filed by appellant in this case, denying the title of the plaintiff was sufficient of itself alone to divest the magistrate of jurisdiction; but we must confess that those cases which are accessible to us seem to be against us on this point. 17 Ency. of Procedure, page 955; 18 Standard Ency. of Procedure, page 571. It is clear, however, from these authorities that where the counter-affidavit and the evidence both show that serious questions of title or other substantial rights are in dispute, then a justice of the peace has no jurisdiction. In this connection, we again call attention to the fact that appellee had no title whatever to the lands involved in controversy for the year 1918, which is in dispute.

Proceeding to the next question however, we say that even if the justice of the peace had jurisdiction and conceding that the five-day statute applies, even then the appeal was taken in time because it was perfected on January 17th, within five days of the time after the judgment became "final" through its entry and signature on January 14th.

Counsel quotes that part of section 82 which provides that appeals may be taken "within five days after the rendition of the judgment." We wish also to quote and emphasize that part of this statute which provides that the judgment appealed from must be a "final judgment." Counsel seems to contend that the whole solution of the question as to whether the judgment in this case was a "final" judgment after the mere oral opinion of the justice of the peace on January 11th may be arrived at simply by reaching a correct definition of "rendition of judgment." and he understands us to admit that "ordinarily 'rendering' of judgment is the announcement by the court or judge of the decision." We certainly do not make any such admission. A judgment is a "solemn record." *Fayerweather* v. *Ritch,*

195 U. S. 276, 49 L. Ed., 193. It is not to be confused with a mere opinion or decision orally announced from the bench. As stated in our former brief, it is true that some text-writers and some courts have in some cases used expressions which seem to be against us, but by reference to these cases cited under these texts and by reference to the facts in every case where such expressions occur in the opinion of various courts, including all that are cited in appellee's brief, will show that in every case the judgments referred to were evidenced by some record written upon the minutes, or elsewhere. We refer especially to 2 R. C. L., page 106, section 82, which is quoted by appellees. The first reading of this text indicates that a judgment is "rendered" when it is "pronounced by the court," but a careful reading of this definition and the cases which are cited in the notes will show clearly that the writer did not mean to say and had no authority whatever for saying that a mere oral pronouncement is a final judgment. The first case cited is *Chandler* v. *Washoe Ditch Co.*, 28 Neb. 151, 80 Pac. 751; 6th Ann. Cas., page 946. In that case, the court says: "Final judgment in this was pronounced by the court on June 29, 1903, and entered by the clerk in said cause on July 7th, following. This appeal was taken on September 19, 1904. The appeal from the judgment, not having been taken within one year from the time it was rendered by the trial court, is dismissed." of course the case was dismissed when the appeal was taken more than a year after the judgment was actually entered. The use of the word "pronounced" by the text writer, instead of "rendered" arises probably because the two words were confused by the reporter in the syllabus and in the digest. The court certainly did not mean to say that the mere oral announcement of the finding of the court below was sufficient to set in motion the statute limiting the time for appeals. The other case cited under this text is

*Simmons* v. *Hanne,* 50 Fla. 267, 39 Sò. 77; 7th Ann. Cas. 322. In this case, the judgment was written out and signed by the trial court and the only question was whether its true date was the date of its signature or the date of its entry by the clerk. Reading the text referred to further, however, we find that even where the judge writes down and signs a judgment, it will not be considered as rendered until he files it with the clerk and it is the date of the filing and not the date of the signature which will limit the time for taking appeals. We call especial attention to the case cited in the note. *Peterson* v. *Nash,* 112 Fed. 311, 55 L. R. A. 344, which is exactly in point.

An examination of all of the authorities which are cited by appellee will show that in every one of them there was some written entry or memorandum of the judgment made and the text-writer and judge did not in any of them have in mind a case where there was a mere oral announcement of opinion as in the case at bar.

The case of *The Estate of Cook* (Cal.), 11 Am. State Rep. 267, which is cited by counsel, is a case in which the validity of a divorce was called in question and the court frankly says: "If, therefore, the question here presented were a doubtful one, the leaning of the court should be in favor of the validity of the second marriage and against the implication of bigamy." The case was fairly decided, however, and the facts show that the decree of divorce was duly granted by the court and entered in the "minutes," but that it was not entered for a long time afterwards on the "judgment roll." The court simply holds that the entry on the minutes was sufficient to constitute a valid "rendition" of the decree of divorce, and that failure to enter it on the "judgment roll" as seems to be required by the statutes of California, does not constitute a fatal objection.

The case of *Estate of Newman,* 75 California, 213, 75 Am. St. Rep. 146, referred to on page 271 of the *Cook case,* and quoted by appellee, was a case in which the decree had been signed by the judge but was not filed with the clerk for entry on the ''judgment roll'' until some time later, and the question under consideration was whether the decree should be considered as ''rendered'' when it was written and signed, or when it was filed. From reading these California cases, it appears that the procedure there is different from ours, and that judgments, when first written, and signed, are entered on the minutes, but that they must be later filed with another clerk and entered on his ''judgment roll'' before execution can be issued. Bearing this in mind, it is easy to see why the courts of that state drew distinctions between the dates of ''rendition'' of judgments by entering them on the minutes and the dates of their ''entry'' by placing them on the ''judgment roll.'' The courts of that state, however, do not hold that the mere oral announcement of a decision or opinion of the court constitutes a judgment which will set in motion the statute limiting the time for appeals. They expressedly hold the contrary in the case of *Woods* v. *Etiwanda Water Co.,* 122 Cal. 152, 54 Pac. 726 which has already been cited. The case of *State* v. *Henderson,* 164 Mo. 347, 64 S. W. 138, 86 Am. St. Rep. 618, is also a case where a full written memorandum of the judgment complained of was signed by the judges and given to the clerk, though it was not actually entered until some time afterwards.

We have no quarrel whatever with these cases. They have no application to the present question, although the language used, especially in the digests of them, seems at first to be against us. The syllabii contained in 7th Words and Phrases, referred to by counsel, are in the same attitude. All of the cases there referred to are not accessible to us, and doubtless they have not

all been obtained and read by counsel for appellee; but, in view of the overwhelming authorities to the contrary, we feel safe in challenging him to point out a single one of them which holds that the mere oral announcement of the finding of any court is sufficient to limit the statutory right of appeal. The cases of *Clark* v. *Duke,* 59 Miss. 575, and *Herror* v. *Walker,* 69 Miss. 707, do not involve the point. Of course, it is the rendering of a final judgment by the court which gives it vitality and not the entry or enrollment of it by the clerk. If we concede that an appeal bond signed before the judgment becomes final is valid, that would not alter the statutory right to appeal within five days after the judgment becomes final.

Counsel for appellee says that he has found only one case which clearly sustains us, and that is a *Louisiana case* in 37th South. This leads us to believe that he has not read all of the cases cited in our brief. In this connection, we desire to apologize and say that we have not, at this time, read all of these cases, because they are not accessible to us, but in a few cases we have had to rely upon digests which clearly indicate that they are all to the point. At least, all of them that we have been able to obtain sustain us directly.

Of course, the fact that appellant heard the oral decision rendered against him by the Justice of the Peace and immediately prepared his appeal bond and forwarded it to his sureties who lived in a distant county, does not affect the question. Oral notice to him was not sufficient to set the statute in motion. *State ex rel. Grant* v. *First District Court et al.,* 39 Utah, 138, 110 Pac. 981.

Appellant had at least five days after "final judgment" to appeal under section 82, Code of 1906 (if he did not have ten days, as we contend), and he took the appeal within that time.

If we are in error, as stated by counsel, in stating that appellee claimed a forfeiture on the ground that appellant refused to pay rent for 1917, our error is due to an innocent misconstruction of the affidavit filed by appellee, and of the record. Such error, however, does not avail appellee anything because the record shows clearly that he did not have any right, or interest, whatever in the land for the year 1918. The possession of the land for *1918* is the only right involved in this case and the justice of the peace had no jurisdiction to determine that question in the present proceeding, because the relationship of landlord and tenant did not exist between him and appellant for that year or at the time the suit was brought, as we have already shown. he never had anything more than a bare option for 1918, as shown by the record, under the contract between him and owner of the land. We do not contend, and it is not necessary for us to contend, that the statute under which this proceeding was begun, is unconstitutional. We do insist, however, that it provides an exceedingly "drastic" remedy and that it is not at all applicable to cases except those which fall strictly within it.

*P. R. Lowrey,* for appellee.

It is admitted, and also shown by the testimony, that the trial before the justice of the peace was concluded, and the judgment announced in favor of the plaintiff and the bond for appeal was fixed, and the appeal bond actually written out and turned over to the defendant, and signed by him on January 11th, the day the trial was concluded, and that it was then and there stated in court that the attorney for the plaintiff would write the judgment later, and that the judgment was, a few days later, actually written on the docket, and dated on that date and signed by the justice of the

peace, before the expiration of the five days allowed for appeal; and on the appeal this judgment, so written and signed, was included in the record from the justice of the peace.

By section 83 of the Code of 1906, it was provided that appeals in civil cases before justices of the peace, must be taken within five days, by giving bond in a sum not less than one hundred dollars, with a sufficient surety, etc.

By section 82, it was provided that in unlawful detainer cases appeals might be taken within five days by giving bond in a sum not less than two hundred dollars, with sufficient sureties, etc.

By section 2895, it is provided that in cases before the justice of the peace by landlords to remove tenants, the right of appeal shall exist as in cases of unlawful entry and detainer.

By an Act of March 8, 1912, (Laws 1912, page 280), section 83 is amended so as to allow ten days instead or five for appeals in civil cases. This is, by its caption and enacting clause, an Act to amend section 83, and nothing more.

These several sections appear in Hemingway's Code, as sections 62, 63, and 2393, sections 62 and 2393, being identical with the sections of the Code of 1906, and section 63 being section 83 of the Code of 1906, as amended.

It seems to me that it is unnecessary to argue or cite authorities to show that sections 82 and 2895 were not in any way amended or affected by the Act of 1912, amending section 83, and that sections 82 and 2395 are to be held and construed exactly as if section 83 had not been amended, but if authority is necessary, I think that the specific point is decided in case of *State* v. *Cresswell,* 78 So. 770.

Appellant seems to contend that while this was a proceeding under the statute for removal of tenant by

landlord, it was improperly brought, and therefore the statute for appeals in that kind of case would not govern. This is begging the question. Whether it was properly brought and could be maintained, was the very question before the justice of the peace court, and which was decided by the justice of the peace in favor of the plaintiff. That was the identical question adjudged, from which judgment the defendant sought to appeal.

The appellant would engraft upon the statute, allowing a landlord to proceed in this manner, the word "unquestionably" and contend that if there is any question about the defendant being a tenant or holding over after the expiration of the tenancy, then the statute does not apply. If the tenancy and the holding over must be "unquestionable," then there is no room for a lawsuit.

If the filing of the affidavit by the tenant, denying the tenancy and the holding over, ousts the jurisdiction of the justice of the peace, then there could in no case be a trial in this suit for the statute contemplates that this shall be done before any trial is had.

Unless the defendant had filed this affidavit, there would have been a judgment "of course" and no trial would have been had. In other words, the only way for the tenant to be heard is for him to make and file this affidavit and if the question is then decided against him, the thing from which he appeals is this decision, and the statute says that it must be taken as in cases of unlawful entry and detainer.

It is begging the question again, to say that "as" in the statute means in the same manner, but not in the same time. "As" means "just like" and for the appeal to be taken "just like" in unlawful detainer, it must be taken in the same time. It seems to me that this discussion is splitting hairs, and I feel like apologizing to the court for indulging in it. I there-

fore submit that there is no serious question that the
appeal from the justice of the peace in this case must
have been taken within five days of the rendition of
the judgment for the plaintiff. That is the plain
statute, and I take it, the court will not undertake to
engraft exceptions upon the statute. This brings us to
the next question, viz: when was this judgment "render-
ed?"

The statute says that the appeal might be taken
"within five days after the rendition of the judgment."
Was this judgment "rendered" when it was announced
by the justice of the peace at the conclusion of the
trial, or when it was formally entered on the docket
and signed by the justice of the peace?

If I correctly get the position of the appellant, he
admits that ordinarily "rendering" of a judgment is
the announcement by the court, or the judge, of the
decision, but the contention seems to be that in this
particular suit, the word "rendition" means "entry."
In other words, that in this particular suit the legis-
lature did not say what it meant to say. The dis-
tinction in all of the authorities between "rendition"
of the judgment and "entry" of the judgment is as
clear as day. There can be no doubt that, ordinarily,
the words mean different things—each distinct from
the other. This being the case, I suggest that the
burden lies heavily upon the appellant to show that the
legislature in this statute, when it used the word
"rendition" meant "entry."

18 Enc. of P. & P., pages 429 and 430, draws the
distinction clearly. 15 R. C. L., page 578, makes the
same distinction, as follows: "A distinction should be
drawn between the 'rendition' of judgment by the court
and the 'entry' of record by the clerk of the court. The
judgment is essentially the act of the court, while the
entry of it among the files of the court is considered a
clerical or ministerial act . . . when the court

*orally* announces a judgment in apt language which finally determines the right of the parties to the action, and leaves nothing more to be done, except the ministerial act of the clerk in entering it, the judgment is deemed to have been rendered. . . . The judgment itself is not what may be entered, but what is considered and delivered by the court.''

To the same effect is the decision in *Estate of Cook* (Cal. ), 11 Am. St. Rep. 267.

The appellant seems to contend that while the rendition of a judgment ordinarily is the announcement by the court, that there must be some written memorandum and that the word when used in connection with appeals has a meaning different from its ordinary meaning.

This identical question seems to have been considered by the court in *Estate of Cook, supra.* If there remains any doubt on this question, it seems to me to be settled in 2 R. C. L., page 106, section 82, where this identical question is under discussion.

I might accumulate authorities on this point, but as appellant has cited a number of them holding exactly the same way as the authorities quoted, I will simply refer the court to the accumulation of authorities by the author of Words & Phrases, in Volume 7, pages 6082 to 6084, which practically make the matter unanimous. In several of the decisions referred to, particularly *Fleet* v. *Young,* (N. Y.), 11 Wend. 522, and *Schurtz* v. *Romer,* 22 Pac. 652, 81 Cal. 244, the identical question of the application of the statute providing for appeals is considered. These two citations are on page 6082.

It seems to me that we are not entirely without authority upon this question in our own supreme court, and that this court holds the same rule. In *Clarke* v. *Duke,* 59 Miss. 575, the court, in the opinion, on pages 578 and 579, considering this very question, says: ''The time of rendition of a judgment is when the court

signifies its assent to the sentence of the law, as the result of proceedings in the case. The judgment must be evidenced by the record, but when entered, according to law, it must be considered to have existed from the time it was given by the court.''

In the case at bar, the judgment, of course, was entered by the justice of the peace, who constitutes the court, and not by a clerk; or rather, the justice of the peace acting as his own clerk, but this does not change the principle, that the entry is a *ministerial* act and the rendition a *judicial* act. This is well settled by this court in a number of cases, but I refer particularly to *Lunenberger* v. *State*, 74 Miss. 379.

The appellant seems to be a little confused on the question as to whether the judgment must be entered in full, in order to be rendered, or whether a simple memorandum in writing completes the rendition. As pointed out in a number of authorities, which I have cited, the rendition is an oral act of pronouncing judgment at the conclusion of the case, and does not depend to any extent upon the writing. It is true that before the judgment can be introduced in evidence, it must be written and signed. It must also be in writing for the appellate court to hear and determine it, but it is not necessary that it should either be written or signed on the day it is rendered. It is just as effective as evidence and as effective in the record on appeal where the writing and signing was done on a day subsequent to the rendition. But there is no question in the case at bar about there being a valid judgment, and it is shown in the record, and was written and signed before the appeal went up.

Among the many cases cited in appellant's brief, I have been able to find but one which sustains his contention, and that is a Louisiana case in 37th South. This case is manifestly not in accord with the great weight of authority. Appellant cites a number of

Mississippi cases holding that there must be a judgment shown by the record in order for the appellate court to review the cases, but as above stated, there is no decision that this judgment must have been entered on the day it is rendered, or that the beginning of time for an appeal did not start when the judgment was entered. Such a holding would not only be contrary to the statute, but it would bring endless confusion for appeals from the justice of the peace.

If the time for appeal did not begin to run until the entry, parties to the litigation in these courts could never know exactly when their right of appeal expired, without following up the justice of the peace and learning definitely when the judgment was written out. This was evidently the idea of the legislature when it fixed the expiration of the time at five days from the rendition of the judgment.

Counsel for appellant is mistaken in his contention that the judgment was in the breast of the justice of the peace, subject to change at his will until it was entered. The judgment was fixed at its time of rendition, and the court had no right to change it or to enter any other judgment than that rendered. It is not contended here that he did either change it or enter any other judgment. If he had done so, it might have raised another question. Neither is it correct that the bond filed before the judgment was actually entered would not have been good, for the appeal. The court has held that even a bond made and dated before the judgment is rendered, is good. *James* v. *Woods,* 65 Miss. 528, 13 Enc. P. & P. 567; *Bush* v. *State* (Miss.), 6 So. 647, 2 Cyc. 587.

I most respectfully submit that the judgment of the circuit court dismissing the appeal was correct and should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

W. R. Boykin instituted a proceeding to dispossess T. C. Simpson as a tenant under the chapter of the Code on landlord and tenant. The affidavit recites that:

"T. C. Simpson was a tenant of affiant during the year 1917 on the land in Quitman county, Mississippi, described as follows:

"That certain land known as 'the Redding Place,' consisting of about one hundred and sixty acres of land in cultivation, in addition to such woodland and waste lands as are owned by J. T. Redding near Sledge, in said county, and situated two and one-half miles south of Sledge.

"The term of lease of tenant expired with the 31st day of December, 1917, and on the 1st day of January, 1918, affiant demanded possession of said lands from said tenant, which possession said tenant refused and refuses to give, and is now holding over and continuing in possession of said premises, after the expiration of his term, without the permission of affiant. The said tenant also agreed to pay rent for the year 1917 in the sum of nine hundred dollars, which sum he has not paid, or any part thereof, and is now wholly in arrears and in default of the said sum of nine hundred dollars due to the affiant for the rent of said land for the year 1917. Affiant therefore brings this action to remove the said T. C. Simpson from the possession of the said land and to recover the possession of the said land from the said tenant."

Upon this affidavit a writ was issued, commanding said tenant to give possession or show cause, in accordance with the statute, at a day, fixed as the 10th day of January, 1918, as to why said possession should not be delivered to said Boykin. T. C. Simpson made affidavit that he was not wrongfully withholding possession of said land mentioned in the affidavit from

plaintiff, and that he did not hold the possession of said land during the year 1917 as tenant of the plaintiff, and that the plaintiff is not now entitled to the possession of said land, and that he does not owe plaintiff any sum for said rent during the year 1917.

The trial was had before the justice of the peace issuing the writ, and possession was awarded to the plaintiff; the judgment of the court reciting that, "issue being joined and the arguing continuing for two days, and the court, having heard the evidence and argument of counsel, finds for the plaintiff that he is entitled to the possession of the premises in controversy," reciting the description of the land in accordance with the original affidavit. This judgment was orally rendered at the conclusion of the trial on the 11th day of January, but was not actually entered upon the docket of the justice of the peace until the 14th day of January, 1918. On the 17th day of January, 1918, an appeal bond was tendered to the justice of the peace and approved by him to take an appeal to the circuit court. When the case reached the circuit court, a motion was made by the plaintiff to dismiss the appeal, because the bond was not presented to, or filed with, the justice of the peace within five days after the rendition of the judgment in the case by the justice of the peace. The motion to dismiss the appeal was sustained in the circuit court, and the defendant appeals here.

There are three contentions presented to us on appeal: First, that the statute of ten days for appeals from ordinary civil cases in a justice of the peace court applies in this case; second, if that statute does not apply, that they had five days from entry of the judgment on the docket in which to appeal; third, the justice of the peace did not have jurisdiction to try and dispose of the cause, because the value of a year's rental of the place

in controversy would exceed the amount of a justice's jurisdiction.

The statute upon which the suit here was instituted is section 2885, Code of 1906 (section 2383, Hemingway's Code), which reads as follows:

"A tenant or lessee at will or at sufferance, or for part of a year, or for one or more years, of any houses, lands, or tenements, and the assigns, undertenants, or legal representatives of such tenant or lessee, may be removed from the premises by any justice of the peace of the county, or by the mayor or police justice of any city, town or village where the premises, or some part thereof, are situated, in the following cases, to wit:

"First. Where such tenant shall hold over and continue in possession of the demised premises, or any part thereof, after the expiration of his term, without the permission of the landlord.

"Second. After any default in the payment of the rent pursuant to the agreement under which such premises are held, and when satisfaction of the rent cannot be obtained by distress of goods, and three days' notice, in writing, requiring the payment of such rent or the possession of the premises, shall have been served by the person entitled to the rent on the person owing the same."

The affidavit in this case conforms to that required in section 2886 for the institution of the proceeding provided for in section 2885. Section 2895, Code of 1906, provides for appeals in this proceeding; said section reading as follows:

"The magistrate, before whom proceedings shall be had against a tenant holding over, shall keep a full record of his proceedings, and shall carefully preserve all papers in the cause, and the same costs shall be taxed and paid as are allowed for similiar service in cases of unlawful entry and detainer, and the right of appeal shall exist as in such cases."

Section 82, Code of 1906, provides that an appeal from judgment of unlawful entry and detainer shall be taken within five days after the rendition of the judgment by entering bond with sufficient sureties, etc. Section 83, Code of 1906, as amended by chapter 203, Laws of 1912, page 280, provides for the taking of appeals in civil cases before the justice of the peace within ten days after the rendition of the judgment. The question for consideration here is: When was the judgment rendered within the meaning of these statutes? Was it at the time the judgment was pronounced in open court, or was it when the justice of the peace actually entered and signed the judgment upon his docket?

In the case of *Lunenberger* v. *State,* 74 Miss. 379, 21 So. 134, this court held as follows:

"The entry of the judgment which had been rendered was merely clerical, and in this case it is undisputed that the judgment was really rendered, and that a proper notation of the justice's action was made in writing, and was transcribed in the docket two days later."

The court refused to hold in this case that the judgment must be entered on the docket during the term of the court, holding that the entry was a mere clerical duty.

In case of *Holley* v. *State,* 74 Miss. 878, 21 So. 923, is was held that:

"If a justice of the peace tries a criminal case, of which he has jurisdiction, and enters his judgment on a loose piece of paper, and, after his court adjourns, transfers the entry to his docket, the judgment is not invalid."

It would seem from these authorities that in this state the rendition of the judgment is the pronouncement of the judgment of the court at the conclusion of the trial, and that it is not the entry of the judg-

ment on the docket that constitutes the rendition of the judgment. The pronouncement of the judgment in open court is the judicial act which, while it must be entered on the docket, need not be done immediately. This seems to be the view of the great weight of authority in cases where it turns upon the meaning of the term "rendered." Words and Phrases, First Series, vol. 7, p. 6082; Words and Phrases, Second Series, vol. 4. p. 266. It follows that the limitation begins to run from the date of the announcement of the judgment on the 11th of January. The statute above quoted under the landlord and tenant chapter providing for appeals as in case of unlawful entry and detainer means that the appeal shall be taken within the time required for appeals in such cases as well as in amounts and other conditions. It follows that the appeal should have been taken not later than the 16th of January.

In regard to the jurisdiction of the court to entertain this suit, we think that the power of the justice of the peace in this case is a special statutory jurisdiction, deriving its force from legislation under section 172, Constitution of 1890, providing that:

"The legislature shall from time to time establish such other inferior courts as may be necessary and abolish the same whenever deemed expedient."

This suit does not involve a demand for the value of land or the value of possession for any given period of time, but only for possession; but, if the value of the use of the land applied, the only value to be found would be the value between the termination of the tenancy and the date of the judgment, which, in this case, would be only eleven days.

It follows that the judgment of the court below was correct, and is affirmed.

*Affirmed.*